**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

STEVEN GILBERT                            *

Plaintiff                                 *

v                                         *          Civil Action No. ELH-17-3357
                                                     and
RICHARD J. GRAHAM, Warden,                *          Civil Action No. ELH-18-230
WEXFORD HEALTH SOURCES, INC,
AVA JOUBERT-CURTIS, M.D.,                  *
APRIL WARNICK,
BURNICE L. SWAN,                          *
MARIA LEWIS, and
DENIS MARTIN                              *

Defendants                                *
                                        ***

## MEMORANDUM OPINION

Steven Gilbert, the self-represented plaintiff, is an inmate currently incarcerated at the

Western Correctional Institution ("WCI"). In Case ELH-17-3357, he filed suit against Warden

Richard Graham, Jr., but stated in the body of his "Motion" that he has sued "the Medical staff of

Wexford Health Care" ("Wexford").[1] ECF 1. It has been construed as a civil rights Complaint.

Counsel for the Maryland Department of Public Safety and Correctional Services

("DPSCS") was directed to show cause why injunctive relief should not be granted in favor of

Gilbert in connection with his asserted medical issues. ECF 3. The response to show cause

(ECF 12) was filed, and supported by exhibits. Gilbert was advised that the Court would

construe the response as a motion for summary judgment, and of his right to respond. ECF 14.

Gilbert filed an opposition (ECF 15), with exhibits. Additionally, Gilbert filed two "motions for

medical relief." ECF 17; ECF 25.

---

[1] Wexford's corporate name is Wexford Health Sources, Inc. The Clerk shall amend the docket to reflect the name of Wexford and the correct spelling of the name of Dr. Joubert-Curtis.

On January 24, 2018, Gilbert filed a Complaint in Case ELH-18-230 (ECF 1) against Ava Joubert-Curtis, M.D.; April Warnick; Burnice Swan; Maria Lewis; Dennis Martin; and Wexford (collectively, the "Medical Defendants"). ECF 1. He then filed what was docketed as an Amended Complaint on February 23, 2018 (ECF 5), and what was docketed as a Second Amended Complaint on March 29, 2018. ECF 6.

Because of the similarity of the cases, the two actions were consolidated. *See* ECF 8 in Case ELH-18-230; ECF 21 in Case ELH-17-3357. I shall refer to the 2017 case as "Case I." I shall refer to the 2018 case as "Case II." Case I is the lead case, and citations to the record shall generally refer to filings in that case, unless otherwise noted.

The court is mindful of its obligation to construe liberally the pleadings of a self-represented litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *White v. White,* 886 F. 2d 721, 722-723 (4th Cir. 1989). But, liberal construction does not mean that a court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented."). Moreover, the court must abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

Gilbert's pending motions to proceed in forma pauperis shall be granted. ECF 18 in Case I; ECF 2 in Case II. No hearing is necessary to determine the remaining matters pending before the court. *See* Local Rule 106.5 (D. Md. 2016).

For the reasons stated below, I shall dismiss the claim against Warden Graham. Gilbert's motions for medical relief shall be denied. But, I shall deny, without prejudice, the summary judgment motion as to the Medical Defendants. And, the Clerk shall be directed to serve Wexford; Ava Joubert-Curtis, M.D.; April Warnick; Burnice Swan; Maria Lewis; and Dennis Martin in regard to Gilbert's claim that he has not been adequately treated for an H. Pylori infection.

## I.        Factual Background

Gilbert claims that he told three nurses, April Warnick, Maria Lewis, and Dennis Martin, that he had been throwing up blood beginning October 22, 2017, without receiving medical treatment. ECF 1 at 1. He alleges that he was told his condition would be reported to a physician, but he did not receive treatment, despite that assurance. *Id*.

According to Gilbert, he informed Correctional Officers Frenzel, Romey, Layton, and Davis, as well as Sgt. Drew, that he was vomiting blood for a period of days and had not been seen by a medical provider, despite submitting sick call slips requesting attention. ECF 1 at 2.[2] He also claims that he filed a complaint through the prison grievance procedure, known as an ARP, stating that he has cancer, with lumps and pain in his upper chest area. *Id*. According to Gilbert, Nurse Maria Lewis told him she would try to get him seen by a provider, but he was never seen for the complaints of chest pain. *Id*. Gilbert did not explain why he believes he has cancer.

Gilbert seeks 800 million dollars in damages from Wexford "for medical neglect." ECF 1 at 3. Because of the apparent seriousness of the nature of his claimed ailment, this court directed an immediate response from DPSCS prior to service of the complaint. *See* ECF 3.

_____

[2] Gilbert does not name these officers as defendants in any of the pleadings.

Counsel filed a response (ECF 12), together with medical records and a Declaration under oath from Burnice Swan, the Assistant Director of Nursing at WCI, where Gilbert is incarcerated. She disputes Gilbert's allegations that he has not received medical attention for his complaints. ECF 12-1 (medical records); ECF 12-2 (Declaration of Swan).

The medical records reflect that Gilbert was seen by medical staff in response to his claims that he was vomiting daily for over a month and, despite the fact that he exhibited no signs or symptoms of being dehydrated or otherwise in distress, tests were ordered, which came back normal. ECF 12-1 at 59, 68; ECF 12-2 at 2. On December 27, 2017, Dr. Joubert-Curtis reported that Gilbert complained that he had been "vomiting everything he eats or drinks for 67 days," but his demeanor when presenting to the dispensary was "smiling and laughing." ECF 12-1 at 72. In addition, Gilbert had gained weight over the previous four months. Moreover, "Labs and [abdominal] x-rays are normal." *Id.* And, a "fecal occult blood test" was also "negative." *Id.*

Dr. Joubert-Curtis noted that Gilbert has a psychiatric history and has been diagnosed with "multiple personality disorder, antisocial personality and dissociative personality disorder." *Id.* He is under the care of psychiatric staff. *Id.* Dr. Joubert-Curtis also noted, however, that she was "ordering labs for h.pylori, and inflammatory markers." *Id.* Of import here, there is no further indication regarding the results of those tests, whether other treatment was ordered as a result, or whether or not further treatment is required.[3]

---

[3] According to the Mayo Clinic's website:

Helicobacter pylori (H. pylori) infection occurs when a type of bacteria called Helicobacter pylori (H. pylori) infects your stomach. This usually happens during childhood. A common cause of peptic ulcers, H. pylori infection may be present in more than half the people in the world. Most people don't realize they have H. pylori infection, because they never get sick from it. If you develop signs and symptoms of a peptic ulcer, your doctor will probably test

Gilbert's correspondence addressing the response to show cause takes issue with the assertion that he has been diagnosed with dissociative reaction disorder, antisocial personality disorder, or dissociative personality disorder. ECF 13. He states that he is "only diagnosed w[ith] ADHD, Bipolar, Schizophrenia, psychotic disorder, multiple personality disorder, Asperger's disorder, major depression, & PTSD." *Id*. Further, Gilbert observes that his mental health issues should have nothing to do with his complaint regarding vomiting blood and adds that "they also cannot find out what's wrong with me nor are they checking my vomit to see what's wrong with me or causing me to be sick." *Id*.

In Gilbert's opposition to summary judgment (ECF 15), Gilbert states that he should be granted injunctive relief because he has been "spitting up blood" and has a migraine headache. *Id*. at 1. Notably, he claims the labwork from December 27, 2017, came back positive for H.pylori, but that Swan told him "you are fine." *Id*. According to Gilbert, he has not been treated for either the H.pylori infection or his high cholesterol. *Id*. at 2. He reiterates that the status of his mental health is irrelevant to his need for medical treatment because he is "extremely sick." *Id*. With regard to Warden Graham, Gilbert simply states that he wrote to Graham and told him that he is sick and needs to see a doctor. *Id*. at 1-2.

In a pleading that was docketed as a motion seeking medical treatment, Gilbert claims he has been sick for 122 days and that he has the H. Pylori virus. ECF 17. Further, he contends that he is refused treatment despite his assertions that he has been vomiting blood, foods, liquids, and

---

you for H. pylori infection. If you have H. pylori infection, it can be treated with antibiotics.

https://www.mayoclinic.org/diseases-conditions/h-pylori/symptoms-causes/syc-20356171 (last visited July 11, 2018).

his medications.  *Id*.  He asserts that he has "asked to have a scope to look at [his] stomach," but has "not received treatment whatsoever."  *Id*.

In another request for medical treatment (ECF 25), Gilbert asserts "medical neglect," alleging he has H. Pylori that has been untreated for 188 days; he has been sick with H.Pylori "for one whole year now"; he has never been treated by Wexford staff; he cannot keep food down; he is vomiting blood; and he has pain in his chest and stomach.  *Id.* at 1.  Further, he claims that the failure to provide him with treatment for the virus has caused him to develop hyperlipidemia (high cholesterol).  *Id*.

In an amended complaint, originally docketed as ECF 5 in Case II (Civil Action ELH-18-230), and then filed as ECF 22 in Case I, Gilbert makes similar claims against defendants Wexford, Joubert-Curtis, Warnick, Swan, Lewis, and Martin.  ECF 22.  He states that Swan did a wellness check on December 27, 2017, and determined that he has H. Pylori and high cholesterol.  *Id.* at 1.  Further, he claims that he has submitted several sick call slips, but has not been seen by a medical provider for his complaint of "vomiting blood for 160 days."  *Id*.

Gilbert reiterates his demand for 800 million dollars in damages for medical malpractice and negligence against Dr. Joubert-Curtis and Swan because they did not comply with his demand to be sent to a hospital to be treated for H. Pylori.  ECF 22 at 2.

## II.  Standard of Review

### A.  Summary Judgment

This court advised the parties that it would construe the response to show cause as a motion for summary judgment under Fed. R. Civ. P. 56.  The parties were thus given notice that the pleading was so construed, and Gilbert was advised of the opportunity to oppose the motion.  ECF 14.  Gilbert has done so.  ECF 15; ECF 17.

"District courts have inherent power to grant summary judgment." *Adams Housing, LLC v. City of Salisbury*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam); *see also Allstate Ins. Co. v. Fritz*, 452 F.3d 316, 323 (4th Cir 2006). However, before granting summary judgment, a Court must afford the parties notice and an opportunity to be heard, and to present its evidence, and to establish a dispute of material fact. *Celotex Corp.*, 477 U.S. at 326; *United States Dev. Corp. v. Peoples Fed. Savs. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989).

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'" *Adams Housing, LLC*, 672 F. App'x at 222 (citation omitted). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have

by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F.Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted); *see Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x, 552, 561 (4th Cir. 2015). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat*, 346 F.3d at 525 (alteration in original) (quoting Fed. R. Civ. P. 56(e)). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Judd*, 718 F.3d at 313. On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

In sum, to survive summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

## B. Motion to Dismiss

The Court could construe ECF 12 under the standards applicable to a motion to dismiss under Rule 12(b)(6), rather than under the summary judgment standards applicable to Rule 56.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the

claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678 (stating that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Iqbal*, 556 U.S. at 678; *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the

court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, without converting a motion to dismiss to a motion for summary judgment, a court may properly consider documents expressly incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint by reference and authentic.'" *U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir.

2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512-13 (4th Cir. 2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004).

To be "integral" a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the [party] attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

## C. Injunctive Relief

A preliminary injunction is an "extraordinary and drastic remedy." *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

"Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at, 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).

## III. Discussion

### A. Injunctive Relief

To the extent Gilbert seeks an order requiring his hospitalization for treatment of his illness, he seeks injunctive relief. *See* ECF 15, 17, 22. A preliminary injunction is an "extraordinary and drastic remedy." *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About*

*Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at, 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

Gilbert fails to demonstrate that he is likely to succeed on the merits or that he is likely to suffer irreparable harm absent preliminary injunctive relief from this court. From the medical records and the Declaration under oath pertaining to Gilbert's care, it is clear that Gilbert is receiving medical attention for his complaints, albeit not the attention he seems to believe is appropriate. Courts should grant preliminary injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). Injunctive relief is inappropriate under these circumstances.

### B. Claim against Warden Graham

Warden Graham is mentioned only in the caption of the Complaint. There are no specific allegations against Graham, apart from Gilbert's claim that he wrote to Graham and told him that he (Gilbert) needed medical attention. ECF 15 at 1-2. To the extent that the claim is based on Graham's position as warden, that alone is not enough to find him responsible for an alleged failure to provide proper medical care.

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, ___ U.S. ___, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782

(4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

 In the context of this case, Section 1983 liability on the part of a supervisory defendant requires a showing that:  "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations."  *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted) *abrogated on other grounds*; *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (supervisory liability for an inmate's beating by prison guards).

Plaintiff does not allege that Graham has interfered with or authorized indifference to a stated serious medical need.  Moreover, prison officials are entitled to rely on the opinions of medical professionals regarding appropriate medical treatment.  *See Militier v. Beorn*, 896 F.2d

18

at 854, *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995).  The claim against Warden Graham is subject to dismissal.

### C.  Claim against the Medical Defendants

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).  A

medical condition is serious when it is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted), *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Farmer*, 511 U.S. at 839-40. As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (citation omitted). Although this "'entails more than mere negligence ... it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer*, 511 U.S. at 835).

In order "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. In other words, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that

risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). As the *Farmer* Court explained, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, "[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). But, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice*, 58 F.3d at 105. Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble, supra*, 429 U.S. at 106). Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See*

*Farmer*, 511 U.S. at 844. Further, the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable.*" *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977) (emphasis added).

In Gilbert's amended complaint (ECF 15) and opposition response (ECF 22), Gilbert asserts, in pertinent part, that the Medical Defendants (Wexford, Joubert-Curtis, Warnick, Swan, Lewis, and Martin), have not treated his serious illness, which he asserts is an H. pylori infection. The materials submitted by the Medical Defendants with the response to show cause reflect that plaintiff has received treatment for various ailments, but the materials stop short of demonstrating that Gilbert either does not have H. pylori or received appropriate follow-up testing and treatment in light of the alleged positive test result showing an H. pylori infection. Accordingly, summary judgment is denied at this juncture, without prejudice to the right of the Medical Defendants to renew it.

Service of the Complaint shall take place as set forth in the separate Order, which follows.

Date: August 28, 2018                          _____/s/_____
                                               Ellen L. Hollander
                                               United States District Judge